**June Elaine BELL, Individually and as Administratrix of the Estate of Jerry Ervin Bell, Plaintiff/Appellant,**

v.

**Andrew Wade BELL and wife, Glenda M. Bell, Defendants/Appellees.**

Court of Appeals of Tennessee,
Middle Section at Nashville.

Dec. 14, 1994.

Permission to Appeal Denied by
Supreme Court March 20, 1995.

Robert N. Skinner, Jr., Spiller Campbell, Jr., Nashville, for appellant.

John G. Doak, Sr., Nashville, for appellees.

## OPINION

WILLIAM B. CAIN, Special Judge.

In this case plaintiff seeks primarily to impose a trust upon the proceeds of life insurance on the life of her late husband, Jerry Ervin Bell.

Plaintiff June Elaine Bell and the intestate, Jerry Ervin Bell, were husband and wife. Defendant Andrew Wade Bell is a child of Jerry Ervin Bell and wife, June Elaine Bell.

Plaintiff, early in 1991, had sued Jerry Ervin Bell for a divorce in the Circuit Court of Davidson County, Tennessee under case number 91D-1364. In that case, Judge Robinson–Rice issued a restraining order against Jerry Ervin Bell on April 17, 1991, whereby he was restrained and enjoined "... from removing, selling, mortgaging, transferring, or in any other manner dissipating the property or assets of the parties with the exception of ordinary living expenses, pending the final hearing in this cause."

At the time this restraining order was issued, plaintiff was the named beneficiary in policies of insurance issued by John Hancock Insurance Company and Central States Southeast–Southwest, with face amounts of these policies totaling some Twenty-nine Thousand Dollars ($29,000.00).

While the divorce case was still pending and after the issuance of the April 17, 1991 restraining order, Jerry Ervin Bell changed the beneficiary on all of these insurance policies from June Elaine Bell to his son, the defendant, Andrew Wade Bell.

While the divorce case was still pending and the restraining order still in effect, Jerry Ervin Bell died intestate on December 14, 1992.

Thereafter, defendant Andrew Wade Bell, as named beneficiary under these policies of insurance, applied for and received from the insurance companies the proceeds of the policies that were payable on the death of Jerry Ervin Bell.

On January 13, 1993, plaintiff June Elaine Bell qualified as administratrix of the estate of her deceased husband, Jerry Ervin Bell.

On August 5, 1993, individually and in her capacity as administratrix of the estate of Jerry Ervin Bell, plaintiff filed suit against defendant, Andrew Wade Bell and his wife, Glenda M. Bell. The complaint is a detailed one, but the cause of action asserted is relatively simple. Plaintiff asserts that Jerry Ervin Bell violated the restraining order issued against him by the Fourth Circuit Court of Davidson County, by changing the beneficiary of the insurance policies from plaintiff to defendant Andrew Wade Bell. Her assertions against Andrew Wade Bell in the language of the complaint assert:

"The decedent, Jerry Ervin Bell, with the knowledge and understanding of the defendant Andrew Wade Bell, inequitably, deliberately, covertly, and contrary to said restraining order of the Fourth Circuit Court ... changed the beneficiaries of certain death benefits from June Elaine Bell to Andrew Wade Bell."

The complaint further asserts that defendant Andrew Wade Bell has withheld from the administratrix various detailed items of personal property.

On August 25, 1993, defendants filed an extensive answer which is essentially a denial of all of the material allegations of the complaint.

On December 13, 1993, defendant filed a motion for summary judgment, together with a motion for Rule 11 sanctions.

On February 15, 1994, the Chancellor sustained the motion for summary judgment and denied the application for Rule 11 sanctions.

The Chancellor in memorandum held:

"This suit is styled 'complaint to impose trust and recover property.' The plaintiff alleges that Andrew Wade Bell, her son, fraudulently participated in a scheme with

his late father to violate a restraining order issued by the divorce court that prohibited Jerry Ervin Bell from 'removing, selling, mortgaging, transferring, or in any other manner dissipating the assets of the parties with the exception of ordinary living expenses, pending a final hearing ...' Before his death, the complaint alleges, Jerry Ervin Bell changed the beneficiary of life insurance policies, union death benefits, and an annuity from his estranged wife to his son Andrew, the defendant.

In his affidavit, Andrew Wade Bell denies that he encouraged or in any way participated in his father's change of beneficiary. In addition, Rose Palermo, Jerry Ervin Bell's divorce attorney, states in her affidavit that Bell made the changes after consulting with her. There is no evidence to create a genuine issue of material fact regarding Andrew Wade Bell's involvement. He is not liable regardless of whether Jerry Ervin Bell did or did not violate the restraining order.

The complaint also alleges that Andrew Wade Bell took some equipment belonging to his father in violation of the restraining order issued in the divorce case. Andrew's statement in his affidavit that he has never asserted any ownership interest in the equipment is not disputed.

In summary, the plaintiff has not presented any competent evidence to contradict Andrew's affidavit."

■ It is not open to question since *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) and *Byrd v. Hall,* 847 S.W.2d 208 (Tenn.1993), that once defendant asserts by affidavit, or otherwise, facts negating an essential element of the case asserted by the plaintiff, that plaintiff can not simply continue to rely upon her pleadings, but must assert by discovery, affidavit, or other competent evidence, some material fact or facts which taken as true, create a genuine issue of fact for trial.

The only evidence offered in the record by the plaintiff in response to the affidavit of Andrew Wade Bell are the handwritten affidavits of Gail Harper, manager for John Hancock in Nashville and of the plaintiff.

All the Harper affidavit asserts is that she delivered to Andrew Wade Bell, the change of beneficiary forms in November of 1992 and that Andrew Wade Bell delivered the completed forms back to her office.

The affidavit of the plaintiff only asserts that Andrew Wade Bell was aware of the restraining order, prior to the time of the execution by Jerry Ervin Bell of the change of beneficiary forms.

No material issue of fact is presented as to any culpability of Andrew Wade Bell, and certainly nothing is presented against his wife, Glenda.

We respectfully disagree with the Chancellor in his assertion as to Andrew Wade Bell that "he is not liable regardless of whether Jerry Ervin Bell did or did not violate the restraining order."

It is possible for Andrew Wade Bell to be liable to the extent of the insurance proceeds paid to him if the change of beneficiary was in fact, a violation of the restraining order. Such a case would not involve culpable behavior on the part of Andrew Wade Bell but in equity, would reach to the funds in his hands as the proceeds of the insurance policies, even if he was innocent of any wrongdoing.

If, in fact, Jerry Ervin Bell violated the restraining order in changing the beneficiary, he would have been subject to punishment for contempt had he not died.

The Court of Appeals has said: "Moreover, we believe that in all doubtful cases the doubt should be resolved against the one who has changed the beneficiary in defiance of a court order." *Holbert v. Holbert,* 720 S.W.2d 465, 468 (Tenn.App.1986).

The *Holbert* case is useful only by analogy since in that case the decedent had violated a final order of divorce by changing beneficiaries, rather than a restraining order in a pending case that had abated by his death.

Thus, the overriding issue in this case is whether or not the act of Jerry Ervin Bell in changing beneficiaries on his insurance policies, actually violated the restraining order issued in the divorce case.

This is a case of first impression in Tennessee but the precise issue has been addressed in other jurisdictions with varying results.

First, it must be determined whether a death benefit beneficiary of life insurance has a vested interest in the policy or a mere "expectancy."

■ It is settled in Tennessee that such beneficiary has no vested right or interest in the policy but rather a mere expectancy. *Merritt v. Scruggs,* 172 Tenn. 368, 112 S.W.2d 825 (1938); *First Nat'l Bank v. Mutual Benefit Life Ins. Co.,* 732 S.W.2d 278 (Tenn.App.1987); *Herrington v. Boatright,* 633 S.W.2d 781 (1982).

Where the wife is named beneficiary in the husband's insurance policy, her rights are the same as any other beneficiary and if the policy reserves the right to change the beneficiary, she obtains no vested interest during his lifetime. *Page v. Detroit Life Ins. Co.,* 11 Tenn.App. 417, 426–27 (1929).

■ This "mere expectancy" may be converted into a vested interest in the wife where the husband is required by a divorce decree to keep a life insurance policy in effect naming certain beneficiaries and is denied the right to change the beneficiary by such court order. *Herrington v. Boatright,* 633 S.W.2d 781 (1982); *Goodrich v. Mass. Mutual Life Ins. Co.,* 34 Tenn.App. 516, 240 S.W.2d 263 (1951).

It has been consistently held in Tennessee that Tennessee Code Annotated section 56–7–201 does not vest any interest in the widow or children as to the proceeds of life insurance on the husband. *Bailey v. Metropolitan Life Ins. Co.,* 14 Tenn.App. p. 11 (1931); *Butler v. Fowler,* 28 Tenn.App. 217, 188 S.W.2d 612 (1944).

Likewise, this act "... does not limit the authority of the husband to control devolution of the proceeds of policies of insurance upon his life. During his life the policies are his property and subject to his disposition." *Frazier v. Frazier,* 221 Tenn. 705, 430 S.W.2d 655, 658 (1968).

It being settled in this jurisdiction that the beneficiary of a life insurance policy has only an expectancy in the proceeds prior to the death of the insured and that where the policy of insurance provides unlimited discretion to the insured to change the beneficiary at will, he may do so, it must now be determined whether or not an "expectancy" constitutes a marital asset in a divorce action.

A vigorous difference of opinion among sister jurisdictions on this question is apparent. 68 A.L.R.4th, p. 929.

In those jurisdictions where like Tennessee the beneficiary of a life insurance policy has only an expectancy, term life insurance benefits are not "marital property" and a general injunction not specifically prohibiting the insured from changing his beneficiary is ineffective to prevent him from doing so.

In *Metropolitan Life Ins. Co. v. Tallent,* 445 N.E.2d 990 (Ind.1983), the Supreme Court of Indiana addressed the question:

"Whether an insured may change the designation of beneficiary of a group life insurance policy during the pendency of a marriage dissolution proceeding in which a temporary restraining order, which restrains the insured from 'transferring ... or in any way disposing of any property except in the usual course of business or for the necessities of life,' is in effect."

The court held that the term life insurance policy was excluded from the statutory definition of property. The court held:

"The policy as a benefit of employment, was undoubtedly contingent on continued employment. Payment of policy proceeds was contingent on the insured's death. Because there was no present right to withdraw or to receive any benefits, the policy was not property under the statute. Therefore, the policy did not fall within the order restraining decedent from 'transferring ... or in any way disposing of any property.'" 445 N.E.2d 990, 991–92.

In Louisiana, a community property state, the Court of Appeals addressed the same issue as to term insurance where the restraining order in the divorce case prohibited both parties from "... disposing of, alienating, mortgaging or encumbering any of the community estate."

The court distinguished between the rights of the community during the lifetime of the insured and the right to proceeds upon the death of the insured. As to the former, the court said:

"These benefits include: the right to cash surrender value, receive dividends, assign or pledge policy proceeds, borrow against the policy, name and change of beneficiary, and execute conversion rights.

. . . . .

". . . Therefore, ownership of these policies belongs to the community existing between them. As such the community was entitled to all of the lifetime benefits attributable to a term life policy which, upon accrual of the policy as has occurred here with the death of Alan Jackson, amounts to nothing." *Succession of Jackson,* 402 So.2d 753, 756–57 (La.App. 4th Cir.1981). The court then held:

"Considering first the term life insurance policies, Alan Jackson had the authority in these policies to change the beneficiaries. The proceeds of a term policy acquired during the existence of the community do not constitute a community asset, as discussed above, but instead belong to the validly designated beneficiary. (citation omitted.) Not being a community asset, these proceeds did not come within the scope of the injunction protecting the community estate. Accordingly, the injunction was no bar to Alan Jackson's policy right to change his beneficiary." 402 So.2d 753, 759.

In *Lindsey v. Lindsey,* 342 Pa.Super. 72, 492 A.2d 396 (1985) the Superior Court of Pennsylvania dealt with a preliminary injunction preventing the husband from disposing of any marital property. The husband changed his life insurance beneficiary from his wife to another woman and while the divorce case was still pending died.

The court held that the change of beneficiary did not violate the injunction because the named beneficiary had but a mere expectancy.

The court held:

"Thus, in the case at bar, only the cash surrender value of the policies could be considered marital property. Only this value, then, was 'frozen' by the injunction. Had Mr. Lindsay not died, and had the case reached the equitable distribution stage, the cash surrender value of the policy owned by Mr. Lindsay would have been included as part of the marital property subject to distribution. Because of Mr. Lindsay's demise, the divorce action and its ancillary claims abated, (citation omitted) and, therefore, Mrs. Lindsay will not receive any portion of the cash surrender value of the policies.

"Thus, we find that Mrs. Lindsay's interest as a beneficiary was nothing more than an expectancy. Her interest in the policies themselves was limited to their cash surrender value. Since a change in a beneficiary designation in a life insurance policy is not a conveyance or disposal of a marital asset, Mr. Lindsay's decision to designate appellant rather than appellee as his beneficiary did not violate the lower court's injunction issued on June 8, 1982. Thus, the lower court erred in ordering the beneficiary designations on the two policies to be in the name of the appellee." *Lindsey v. Lindsey,* 342 Pa.Super. 72, 492 A.2d 396, 399 (1985).

In an explicit and pertinent footnote the court said:

"We do not, by this decision, hold that the court did not have the power to order Mr. Lindsay to maintain Mrs. Lindsay as the primary beneficiary of the two policies. We decide only that the instant order enjoining Mr. Lindsay from disposing of 'any marital property' did not encompass the change in the beneficiary designation." 492 A.2d 396, 399.

In the recent case of *Gleed v. Noon,* 415 Mass. 498, 614 N.E.2d 676 (1993) the Supreme Judicial Court of Massachusetts construed a temporary injunction restraining both parties to the divorce from ". . . withdrawing, transferring, conveying, assigning, spending, encumbering, pledging, bequeathing or otherwise divesting themselves of any assets in which they have acquired an interest during their marriage to each other and

which are subject to division ..." by the probate court in accordance with law.

While this injunction was in effect, the husband changed his beneficiary in his life insurance from his wife to his daughter and then died while the divorce case was still pending.

The court held for the daughter saying:

"In this case the order did not specifically prohibit, restrain, or prevent the decedent from changing the beneficiary on any of his policies or accounts and the decedent could not have been found guilty of contempt for doing so if he had survived. Absent a specific court order preventing or prohibiting the beneficiary change, the decedent had the right to change the beneficiary designation on the pension plan, IRA, and life insurance policy while retaining ownership in compliance with the injunction. (citations omitted.)

"A change of beneficiary on a policy or a plan is not a conveyance, transfer, or disposal of the proceeds because they are not acquired until the death or retirement of the insured. (citations omitted.)

"A beneficiary's interest is a conditional interest subject to defeasance until the death of the insured." 614 N.E.2d 676, 678.

The court then observed by footnote:

"We are unpersuaded by the cases on which the plaintiff relies for support because of factual differences in the orders. See Candler v. Donaldson, 272 F.2d 374, 376–77 (6th Cir.1959) (order expressly directed insured to maintain all insurance policies during pendency of divorce; subsequent change of beneficiary, therefore, violated court order.); Standard Ins. Co. v. Schwalbe, 110 Wash.2d 520, 522, 755 P.2d 802 (1988) (preliminary injunction specifically ordered parties not to change entitlement on life insurance policies); Wiltz v. John Hancock Mutual Life Ins. Co., 58 Mich.App. 604–05, 228 N.W.2d 484 (1975) (divorce decree specifically provided that insured was not to change beneficiaries to any policies); Webb v. Webb, 375 Mich. 624–25, 134 N.W.2d 673 (1965) (enumerated within complaint and addressed in restraining order was prohibition from changing beneficiary on life insurance policy and retirement annuity contract.)" 614 N.E.2d at 677–78.

Other courts have held that a beneficiary wife does not hold a mere expectancy in her husband's life insurance but in fact a property interest in the policy. Prince v. Bryant, 87 Wis.2d 662, 275 N.W.2d 676 (1979); Vitas v. Hancock Mutual Ins. Co., Feb. 4, 1987, 1987 WL 6170 (Ct.App.Ohio) 9th App.Dist. Lorraine Co. C.A. 4030 (available on Lexis); Willoughby v. Willoughby, 758 F.Supp. 646 (D.Kan.1990).

Since Tennessee follows the "expectancy" rule, Gleed, Lindsey, Succession of Jackson, and Metropolitan Life, are persuasive.

■ Like Lindsey v. Lindsey, 342 Pa.Super. 72, 492 A.2d 396 (1985), this court recognizes that the broad powers of equity available to the court in a divorce action empower the court to specifically prohibit a change of beneficiary in an insurance policy and that such prohibition is enforceable. It is clear, however, that the restraining order in the case at bar restraining and enjoining Joe Ervin Bell "... from removing, selling, mortgaging, transferring, or in any other manner dissipating the property or assets of the parties with the exception of ordinary living expenses, pending the final hearing in this cause" is insufficient to prohibit Jerry Ervin Bell from changing the beneficiaries in his insurance policies during the pendency of the divorce action.

■ On the surface, this result is harsh but such is not necessarily the case. The parties remained married until the day Jerry Ervin Bell died. As his widow, plaintiff takes unfettered ownership of all property held in tenancy by the entireties, not merely a marital share. She takes by intestate succession a one-third undivided interest in all of the decedent's property, both marital and nonmarital. Had she been the subject of a testamentary exclusion, she would take a one-third undivided interest in all of the decedent's property, marital and nonmarital, by dissent from the will.

Whether the death of a spouse during the pendency of a divorce action is an economic

catastrophe or a windfall for the surviving spouse, depends upon the character and extent of the decedent's estate.

In this case, the trial court sustained the motion for summary judgment of the defendant because no evidence was presented to refute the affidavit of Andrew Wade Bell. This court agrees but further holds that the change of beneficiary was not prohibited by the restraining order issued in the divorce case and therefore, no act of the decedent could form the basis for imposing a constructive trust on the insurance proceeds.

■ Finally, appellant assigns error to the alleged violation of Rule 12.03 of the Local Rules for Courts of Record in Davidson County.

The motion for summary judgment was filed December 13, 1993. The motion was finally heard on January 21, 1994. The judgment granting the motion for summary judgment was signed by the Chancellor February 15, 1994 and entered on March 18, 1994. This procedure complied with the time parameters of Rule 56 of the Tennessee Rules of Civil Procedure.

The thirty-seven day provision of Rule 12.03 of the Davidson County Rules was met, and the refusal of the trial judge to grant time for further discovery was well within his discretion.

■ Appellees seek Rule 11 sanctions in this case. While the joining of Glenda M. Bell as a party-defendant is troublesome, the court does not feel that Rule 11 sanctions should be imposed in a case where the decisive issue is one of first impression in Tennessee.

The judgment of the Chancellor sustaining the motion for summary judgment filed by the defendants is affirmed. The application of the defendants for Rule 11 sanctions is denied.

Costs of this appeal are assessed against appellant.

TODD, P.J., and CANTRELL, J., concur.