FILED

01/21/2020

Clerk of the
Appellate Courts

# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### October 9, 2019 Session

## ROSE COLEMAN v. BRYAN OLSON

**Appeal from the Circuit Court for Montgomery County**
**No. MC-CC-CV-DN-13-0157     Ross H. Hicks, Judge**

_____

## No. M2019-00176-COA-R3-CV
_____

This is the second time this dispute has been before this court. The appeal arises from a violation of Tenn. Code Ann. § 36-4-106(d)(2), which prohibits a divorcing party from "canceling, modifying, terminating, assigning, or allowing the lapse" of any insurance policy that provides coverage to either spouse or their children without the consent of the other spouse, a court order, or abatement of the action. In this case, the wife modified her life insurance policy by replacing her husband with her mother as the sole beneficiary of the policy during the pendency of a divorce action and without the husband's consent or a court order. The wife died one week later, which caused an abatement of the divorce action. After the insurance company remitted the proceeds of approximately $393,000 to the wife's mother, the husband commenced this action to recover the proceeds. Following the first trial, the trial court found the wife intended to remove the husband and substitute their minor child as the insurance beneficiary, and it awarded the proceeds to the child. Both parties appealed. In the first appeal, we reversed the trial court and, after applying an equitable-balancing test, awarded the proceeds to the husband. *See Coleman v. Olson*, No. M2015-00823-COA-R3-CV, 2016 WL 6135395, at *15 (Tenn. Ct. App. Oct. 20, 2016) [hereinafter *Coleman I*]. The Tennessee Supreme Court affirmed our use of an equitable-balancing test but determined there was insufficient evidence to decide the merits on appeal. *Coleman v. Olson*, 551 S.W.3d 686, 697 (Tenn. 2018) [hereinafter *Coleman II*]. Thus, the Supreme Court remanded the case to the trial court with instructions to hear additional evidence and, after considering the equities of the parties, "remedy the violation of the statutory injunction by awarding all or a portion of the life insurance benefits to either or both parties." *Id*. at 688. However, the Court did not identify the equitable factors to consider. Following an evidentiary hearing on remand, the trial court found the equities weighed in favor of the husband receiving the insurance proceeds. The wife's mother appeals, contending the trial court erred in determining that the equities between the parties weighed in favor of depriving her of the insurance proceeds. We have determined that the trial court's ruling was based on the erroneous determination that the court was limited to two options, enforcing the policy based on the beneficiary designation when the statutory injunction went into effect or enforcing the

policy based on the beneficiary designation when the divorce action abated, instead of having the discretion to award a portion of the proceeds to each party based on the equities. Recognizing that the purpose of the § 106(d)(2) injunction was merely to preserve the status quo, not to make the ultimate determination of the rights of the parties to the proceeds, we have determined that the husband was entitled to an amount necessary to prevent an "unjust result" due to the wife's inability to assist in caring for the parties' minor child or to provide financial support to care for and educate the child until he reaches the age of majority. Having considered the financial benefits and burdens resulting from the wife's death, we modify the judgment to award the husband a lump sum based on a support payment of $500.00 a month calculated from the month of the wife's death until the minor child turns eighteen. Because the husband has been receiving a monthly payment of $500.00 since the trial court ordered the clerk of the court to remit such monthly payments out of the insurance proceeds on deposit with the clerk, the aggregate sum the husband has received from the clerk shall be deducted from the lump sum awarded to the husband. The wife's mother shall be awarded the balance of the insurance proceeds on deposit with the clerk. We also vacate the judgment awarded against the wife's mother and the award of prejudgment interest to the husband. The case is remanded to the trial court for further proceedings consistent with this opinion.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Modified in part, Vacated in part, and Remanded

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which RICHARD H. DINKINS and W. NEAL MCBRAYER, JJ., joined.

Christopher J. Pittman, Clarksville, Tennessee, for the appellant, Rose Coleman.

Travis Nathaniel Meeks, Clarksville, Tennessee, for the appellee, Bryan Olson.

### OPINION

This is the second appeal on the issue of whether Bryan Olson ("Husband") or Rose Coleman may recover some or all of the proceeds from the life insurance policy owned by Husband's late wife, Jessica Olson ("Wife"). Rose Coleman ("Ms. Coleman") is Wife's mother.[1]

---

[1] Also at issue in the first appeal was Ms. Coleman's petition for grandparent visitation. Her petition for grandparent visitation is not at issue in this appeal.

Following the first trial, the court awarded the life insurance proceeds to the minor child of Husband and Wife ("the Child"). Additionally, the trial court ordered the clerk of the court to remit $500.00 per month to Husband from the insurance proceeds in the court registry "in lieu of the benefits/child support which [Wife] would have provided if living."[2]

Both Husband and Ms. Coleman appealed. In the first appeal, we reversed the trial court and awarded the insurance proceeds to Husband. *See Coleman I*, 2016 WL 6135395, at *15. After granting Ms. Coleman's Tenn. R. App. P. 11 application for permission to appeal, our Supreme Court summarized the essential facts giving rise to this dispute as follows:

> In 2007, [Wife] and [Husband] were married and the next year they had a child. On July 5, 2012, [Wife] sued for divorce in the Montgomery County Chancery Court. When [Wife] filed and served the complaint, a statutory injunction went into effect prohibiting both parties from changing the beneficiary on any life insurance policy that named either party as beneficiary without the other's consent or a court order. *See* Tenn. Code Ann. § 36-4-106(d)(2).
>
> Four days after filing for divorce, [Wife] became ill and was treated in the emergency room of a local hospital. The next day, [Wife] returned to the emergency room and then went to Vanderbilt University Medical Center where she was diagnosed with Stevens-Johnson syndrome, a serious and painful skin condition.
>
> Two days later, on July 12, 2012, [Wife] signed a document that changed the beneficiary of her life insurance policy from [Husband] to Ms. Coleman and named the [C]hild as the contingent beneficiary. . . . One week later, on July 19, 2012, [Wife] died. As the beneficiary of the life insurance policy, Ms. Coleman collected nearly $400,000.

*Coleman II*, 551 S.W.3d at 689 (footnotes omitted).

In pertinent part, the Supreme Court reasoned and explained in *Coleman II*:

> This is the first time we have considered this issue, and we are adopting a new approach that allows a court to consider the equities of the parties and

---

[2] Husband has been receiving the $500.00 monthly support payment since the order was entered.

- 3 -

provide an equitable remedy for a violation of the statutory injunction. Understandably, the parties did not anticipate the need to offer proof so that the trial court could consider an equitable remedy. [Husband] testified briefly about the marital assets and liabilities. Ms. Coleman offered no evidence regarding the equities, and the trial court made no findings of fact on this issue. As a result, there was insufficient evidence in the record for the Court of Appeals to make a determination about the equities of the parties. On remand, the trial court may hear additional evidence and consider the equities of the parties in determining whether either or both parties should receive all or a portion of the life insurance benefits.

*Id*. at 697.

In its summary, the Court stated:

[W]e hold that [Wife] violated the statutory injunction imposed by Tennessee Code Annotated section 36-4-106(d)(2) when she removed [Husband] as her life insurance beneficiary. The Olsons' divorce action abated when [Wife] died and the statutory injunction became ineffective. A trial court, after the abatement of a divorce action, may remedy a violation of the statutory injunction by considering the equities of the parties. Here, the trial court erred by awarding the life insurance benefits to the Olsons' child based on the pleadings and evidence in the case. The Court of Appeals erred by awarding the life insurance benefits to [Husband] absent sufficient evidence of the equities of the parties. On remand, the trial court, after hearing additional evidence and considering the equities of the parties, may remedy the violation of the statutory injunction by awarding all or a portion of the life insurance proceeds to either or both parties.

*Id*. at 701–02.

On remand, the parties engaged in additional discovery, and the trial court held an evidentiary hearing on December 3, 2018. At the hearing, Husband testified about the debts and assets he acquired due to Wife's death and entered several documents into evidence that supported some of his testimony. He testified that he receives two social security benefits due to Wife's death: one for $1,660 per month as Wife's surviving spouse and the other for $1,600 on behalf of the Child. Additionally, Husband testified that he receives a monthly benefit of approximately $450 from Navy Federal Credit Union, Wife's employer at the time of her death. Thus, as a result of Wife's death, Husband receives approximately $45,000 annually.

The documents entered into evidence showed that the couple had about $190,000 in joint debt when Wife died, including a $140,000 mortgage and $38,000 in

consolidation loans. Husband received the $150,000 marital residence as a tenant by the entirety. Husband and the Child were the heirs of Wife's intestate estate, which was worth approximately $50,000. Other documents showed that Husband assumed Wife's $37,000 car loan and $3,000 credit card debt.

Both parties testified about the costs of litigation and their relationships with Wife and the Child. Husband testified that Wife was never close with Ms. Coleman, while Ms. Coleman testified that she had a "strong relationship" with Wife.

In its Memorandum Opinion of January 3, 2019, the court concluded that the equities weighed in favor of awarding the insurance proceeds to Husband:

> Although on remand the Supreme Court stated that "the trial court might hear additional evidence and consider the equities of the parties" the Supreme Court offered no guidance regarding the factors the trial court should use in determining "the equities of the parties". This Court therefore believes that it has broad discretion in determining these factors. Fortunately, the Court of Appeals opinion in this case does offer some indication of appropriate factors for the trial court's consideration. That court found that the number of marital debts which [Husband] was forced to assume after his wife's death was a factor which favored [Husband]'s position. The Court of Appeals also found that because no equitable division of the marital debt was had before the violation of the statutory injunction that this also favored the position of [Husband]. Finally, the Court of Appeals found that the fact that the change of beneficiary deprived the husband of funds from which to pay his deceased wife's financial obligations also favored his position. This Court agrees that all those factors balance in favor of returning the life insurance policy to its status before [Wife] violated the statutory injunction.
>
> The most significant factor weighing on the mind of the Court is the fact that [Wife] intended her son to be the beneficiary of the insurance proceeds. She wanted to assure his financial future. She never intended for Ms. Coleman to be the beneficiary of the insurance policy. Ms. Coleman prepared the hand-written change of beneficiary which was signed by [Wife]. Everyone agrees that [Wife] intended [the Child] to be the beneficiary of that life insurance policy but Ms. Coleman nonetheless designated herself as the primary beneficiary and [the Child] as a contingent beneficiary, apparently thinking that the use of the terms primary and contingent meant that she would be receiving the insurance proceeds to be used for [the Child]'s benefit. As the Court previously found, whether intentional or not, the change of beneficiary form prepared

by Ms. Coleman did not accomplish what [Wife] intended. Furthermore, even though Ms. Coleman knew that [the Child] was the intended beneficiary and that the funds were to be used for his benefit, she began to use the funds immediately for her own purposes and in her testimony before the Court on December 31 referred to the insurance proceeds as her money. Certainly this factor favors [Husband] as well.

Finally, the Court finds that [Husband] is the sole care giver and provider for [the Child]. [Wife] intended that the insurance proceeds should be used to provide for [the Child]'s future financial needs. The best person to carry out that responsibility is in fact [the Child]'s father, [Husband]. Had the parties not been going through the divorce at the time and had the change in beneficiary not occurred, the insurance proceeds would have been paid to [Husband] without limitation and he would have been responsible for using them to meet not only his needs but those of [the Child] as well.

For the foregoing reasons, this Court concludes, as did the Court of Appeals, that the "equities in this matter balance in favor of returning the life insurance policy to its status before [Wife] violated the statutory injunction."

(footnote omitted). This appeal followed.

The dispositive issue in this appeal is whether the trial court erred in determining that the equities between the parties weighed in favor of Husband receiving the insurance proceeds. [3]

### STANDARD OF REVIEW

The decision to award equitable relief is generally within the discretion of the trial court, *Morrow v. Jones*, 165 S.W.3d 254, 258 (Tenn. Ct. App. 2004) (citing *Early v. Street*, 241 S.W.2d 531, 536 (Tenn. 1951)), and discretionary decisions are reviewed under the "abuse of discretion" standard of review, *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). The abuse of discretion standard does not permit reviewing courts to substitute their discretion for that of the trial court. *Id*. Nevertheless, the abuse of discretion standard of review does not "immunize a trial court's decision from any meaningful appellate scrutiny." *Id*.

---

[3] This court stayed the judgment pending appeal in our order of February 26, 2019.

[R]eviewing courts should review a [trial] court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the [trial] court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the [trial] court's decision was within the range of acceptable alternative dispositions. When called upon to review a [trial] court's discretionary decision, the reviewing court should review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and should review the [trial] court's legal determinations de novo without any presumption of correctness.

*Id*. at 524–25 (internal citations omitted). Stated another way, the appellate court should review a discretionary decision to determine if it was "a conscientious judgment, consistent with the facts, that takes into account the applicable law." *White v. Beeks*, 469 S.W.3d 517, 527 (Tenn. 2015).

**ANALYSIS**

I.   THE TRIAL COURT'S REASONING ON REMAND

The Supreme Court remanded the case to the trial court with instructions to hear additional evidence and, after considering the equities of the parties, "remedy the violation of the statutory injunction by awarding all or a portion of the life insurance benefits to either or both parties." *Coleman II*, 551 S.W.3d at 688. The Court, however, did not identify the equitable factors to consider in fashioning the remedy. Thus, it was incumbent on the parties and the trial court to identify the factors relevant to this case. As the trial court noted in its Memorandum Opinion:

Although on remand the Supreme Court stated that "the trial court might hear additional evidence and consider the equities of the parties" the Supreme Court offered no guidance regarding the factors the trial court should use in determining "the equities of the parties." This Court therefore believes that it has broad discretion in determining these factors.

The trial court did not enumerate the factors it relied on, but the narrative in its Memorandum Opinion reveals the court's decision was based on these facts: (1) Husband was forced to assume all the marital debts; (2) the change of beneficiary deprived Husband of funds to pay for Wife's share of the financial obligations; (3) Wife's death left Husband as the sole caregiver and provider for the Child; and (4) Wife intended that the Child be the beneficiary of the insurance policy rather than Husband, which factor the trial court identified as the "most significant."

Although these facts are relevant, the trial court's analysis reveals that it viewed the remedy for a violation of the statutory injunction as an all-or-nothing allocation rather than an equitable division of the insurance proceeds. In its analysis, the trial court twice framed the issue as whether the "factors balance in favor of returning the life insurance policy to its status before [Wife] violated the statutory injunction." Thus, it is apparent the court was of the mistaken belief it was limited to two options—award the proceeds to Husband because he was the beneficiary when the injunction went into effect or award the proceeds to Ms. Coleman because she was the beneficiary when the divorce action abated. To the contrary, the trial court had the option of remedying the violation of the statutory injunction by "awarding all or a portion of the life insurance proceeds to either or both parties." *See Coleman II*, 551 S.W.3d at 688.

The instruction on remand was to fashion an equitable remedy to the extent necessary "to avoid unjust results." *Id.* (quoting *Aither v. Estate of Aither*, 913 A.2d 376, 378 (Vt. 2006)). Because the trial court limited its decision to an all-or-nothing option, the trial court applied an erroneous legal principle in determining the equities of the parties. *See Lee Med., Inc.*, 312 S.W.3d at 524. ("[R]eviewing courts should review a [trial] court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) **whether the [trial] court properly identified and applied the most appropriate legal principles applicable to the decision**, and (3) whether the [trial] court's decision was within the range of acceptable alternative dispositions.") (emphasis added). As a consequence, it is incumbent on this court to identify the most appropriate legal principles and the applicable facts to fashion an equitable remedy to the extent necessary to avoid unjust results. *See id.*

## II.   THE APPLICABLE LEGAL PRINCIPLES

We have determined that the legal principles most applicable when a widow or widower seeks to recover life insurance proceeds based on the now-deceased spouse's violation of a § 106(d) temporary injunction are: (a) a beneficiary of life insurance has no vested right or interest in the policy prior to the death of the insured, but a mere expectancy; (b) unlike divorce decrees that are final judgments, a § 106(d) temporary injunction does not convert either beneficiary's expectancy interest into a vested interest; (c) final divorce decrees equitably divide the marital estate and responsibility for children; (d) Social Security support payments a parent receives are to be credited toward child support obligations of the other parent; and (e) the goal of an equitable remedy is to "avoid an unjust result."

A.  Prior to the Insured's Death, the Beneficiary Has No Vested Interest

Generally, when a life insurance policy permits the insured to change beneficiaries, the named beneficiary "has no vested right or interest in the policy but rather a mere expectancy" during the insured's lifetime.[4] *Bell v. Bell*, 896 S.W.2d 559, 562 (Tenn. Ct. App. 1994) (citations omitted). The same legal principle applies where a spouse is the named beneficiary. *Id*. (citing *Page v. Detroit Life Ins. Co.,* 11 Tenn. App. 417, 426–27 (1929)) ("Where the wife is named beneficiary in the husband's insurance policy, her rights are the same as any other beneficiary and if the policy reserves the right to change the beneficiary, she obtains no vested interest during his lifetime."). Thus, when one spouse is the named beneficiary on the other's insurance policy, his or her rights are the same as any other beneficiary. *Id*. However, a "mere expectancy" may be converted into a vested interest when a court order or divorce decree requires a spouse to keep "a life insurance policy in effect naming certain beneficiaries and is denied the right to change the beneficiary by such court order."[5] *Id*. (citing *Herrington v. Boatright*, 633 S.W.2d 781 (Tenn. Ct. App. 1982); *Goodrich v. Mass. Mutual Life Ins. Co*., 240 S.W.2d 263 (Tenn. Ct. App. 1951)).

B.  Only a Temporary Restraint

A spouse's right to name or change the beneficiary of his or her life insurance policy is only **temporarily** restrained and enjoined pursuant to Tenn. Code Ann. § 36-4-106(d).[6] Unlike divorce decrees that are final judgments, **a temporary injunction**

---

[4] Wife's insurance policy was a term life insurance policy that had no cash value.

[5] A spouse's mere expectancy interest may also be converted into a vested interest when the right arises out of contract. *See Bowers v. Bowers*, 637 S.W.2d 456, 458–59 (Tenn. 1982).

[6] Tennessee Code Annotated § 36-4-106 states in pertinent part:

(d) Upon the filing of a petition for divorce or legal separation, and upon personal service of the complaint and summons on the respondent or upon waiver and acceptance of service by the respondent, the following temporary injunctions shall be in effect against both parties until the final decree of divorce or order of legal separation is entered, the petition is dismissed, the parties reach agreement, or until the court modifies or dissolves the injunction, written notice of which shall be served with the complaint:

.          .          .

(2) An injunction restraining and enjoining both parties from voluntarily canceling, modifying, terminating, assigning, or allowing to lapse for nonpayment of premiums, any insurance policy, including, but not limited to, life, health, disability, homeowners, renters, and automobile,

(continued…)

- 9 -

**pursuant to § 106(d) does not convert the named beneficiary's "expectancy interest" into a vested interest**. *See Coleman II*, 551 S.W.3d at 696–97. This is because a "temporary order is designed to maintain the status quo pending a final resolution of respective property interests. **It is not intended to be the ultimate determination of the property rights of the parties**." *Wilharms v. Wilharms*, 287 N.W.2d 779, 783 (Wis. 1980) (emphasis added).

## C. Likely Terms of the Divorce and Post-Death Circumstances of Surviving Spouse

When fashioning a remedy resulting from the violation of a temporary order in a divorce action, courts have compared the surviving spouse's circumstances after the insured's death with the likely terms of a final divorce decree when applying the equitable-balancing test. *See, e.g., Am. Family Life Ins. Co. v. Noruk*, 528 N.W.2d 921, 924 (Minn. Ct. App. 1995) (explaining that the equitable-balancing approach "precludes a spouse from automatically receiving insurance proceeds which he or she would not have received had the decedent survived until a final decree was issued"); *see also Irvin v. Irvin*, 286 N.W.2d 920, 922 (Mich. Ct. App. 1979) (denying equitable relief when the surviving spouse "was put in a better position than she would have enjoyed had [decedent] obeyed the injunctive order and had the divorce action proceeded to judgment"). Also relevant is the surviving spouse's conduct, *see Wilharms*, 287 N.W.2d at 784, and the insured's relationship with the new beneficiary, *see Am. Family Life Ins. Co.*, 528 N.W.2d at 925 (noting that named beneficiary "was poor and receiving welfare benefits" and had "a close relationship" with the decedent).

## D. Social Security Payments

Because Husband has and will continue to receive social security payments due to Wife's death, we find applicable the legal principle that a parent is entitled to "credit for Social Security payments against court ordered child support." *Layton v. Life USA*, No. W1999-02274-COA-R3-CV, 2000 WL 633443, at *8 (Tenn. Ct. App. May 12, 2000) (quoting *Sherrell v. Sawyer*, No. 87-68-II, 1987 WL 12498, *6 (Tenn. Ct. App. June 19, 1987)). This court's reasoning in *Sherrell v. Sawyer* was based in principal part on that of the Kansas Supreme Court in *Andler v. Andler*, 538 P.2d 649 (Kan. 1975).

---

where such insurance policy provides coverage to either of the parties or the children, or that names either of the parties or the children as beneficiaries without the consent of the other party or an order of the court. "Modifying" includes any change in beneficiary status.

In *Andler,* the divorced mother brought a proceeding to determine arrearage in child support payments. *Id*. at 651. The father, who was disabled and unemployed, claimed credit for social security payments to the wife for the support of the children. *Id*. at 650–52. The trial court relieved the father of future payments but denied credit against arrears payments because, *inter alia*, the trial court considered the social security benefits as "gratuitous payments" not satisfying the father's child support obligations. *Id*. at 652–53. The Kansas Supreme Court reversed and said in *Andler*:

> Social Security benefits paid to the appellee for the benefit of the parties' minor children as the result of the appellant's disability may not, however, be regarded as gratuitous. On the contrary, the payments received by the appellee are for the children as beneficiaries of an insurance policy. The premiums for such policy were paid by the appellant for the children's benefit. The purpose of Social Security is the same as that of an insurance policy with a private carrier, wherein a father insures against his possible future disability and loss of gainful employment by providing for the fulfillment of his moral and legal obligations to his children. This tragedy having occurred, the insurer has paid out benefits to the beneficiaries under its contract of insurance with the appellant, and the purpose has been accomplished.

> The United States Congress has seen fit to place the federal government in the role of insurer in order to afford members of the work force the protection and security of insurance against future disability. The fundamental nature of the Social Security system is a form of insurance in every sense of that word. Benefits paid out by a governmental insurer, under a policy of insurance for which the insured has paid premiums, are no more gratuitous than benefits paid out by a private insurance company. The United States Supreme Court had occasion to examine the nature of the Social Security system in *Flemming v. Nestor*, 363 U.S. 603 . . . (1960). After noting that the Social security system is 'social insurance', the court continued:

>> '. . . [P]ersons gainfully employed, and those who employ them, are taxed to permit the payment of benefits to the retired and disabled, and their dependents. Plainly the expectation is that many members of the present productive work force will in turn become beneficiaries rather than supporters of the program. . . .

>> '. . . The 'right' to Social Security benefits is in one sense 'earned', for the entire scheme rests on the legislative

judgment that those who in their productive years were functioning members of the economy may justly call upon that economy, in their later years, for protection . . .'

The federal district court in *Roston v. Folsom* recognized that Social Security is in the nature of insurance and that the terms 'insured', 'insurance' and 'beneficiary' are used throughout the act. In fact, 42 U.S.C.A. § 402(d) is entitled 'Child's insurance benefits,' and uses that term throughout.

.        .        .

We hold where a father who has been ordered to make child support payments becomes totally and permanently disabled, and unconditional Social Security payments for the benefit of the minor children are paid to the divorced mother, the father is entitled to credit for such payments by the government against his liability for child support under the divorce decree.

*Andler*, 538 P.2d at 653–54 (internal citations omitted) (quoting *Flemming v. Nestor*, 363 U.S. 603, 609–10 (1960)).

Based on the above and other authorities, this court concluded in *Sherrell v. Sawyer* that the majority of courts hold that "a social security support payment is a pro tanto <u>satisfaction</u> of a court ordered support payment." 1987 WL 12498, at *6 (emphasis in original). Thus, "[u]nder the majority view, an equivalent satisfaction resulted from the social security payments." *Id*.

### E. Avoid Unjust Results

Finally, equitable remedies are to be designed to "avoid unjust results." *See Coleman II*, 551 S.W.3d at 696. In this case, our Supreme Court held that Tennessee courts have the authority to "'right a wrong' and remedy an injustice based on equitable considerations when a party violates a statutory injunction and later dies while the divorce action is pending." *Id*. at 697. But the Court refused to adopt a rigid application of the abatement rule. *Id*. In doing so, the Court relied on the reasoning of the Vermont Supreme Court in *Aither v. Estate of Aither* as persuasive authority:

The Vermont Supreme Court, in rejecting a rigid application of the abatement rule, explained that although the death of one party to a divorce abates the divorce action, a "mechanistic application" of the abatement rule "would frustrate the larger purpose of ensuring that courts have the power to enforce their own valid orders **to avoid unjust results**." At the same

- 12 -

time, the *Aither* court noted that a per se rule voiding transfers in violation of an injunction would not be desirable.

*Coleman II*, 551 S.W.3d at 696 (quoting *Aither*, 913 A.2d at 379–80) (emphasis added).

### III. EQUITABLE FACTORS TO CONSIDER

Having identified the applicable legal principles, our next task is to identify the facts relevant to those principles. Because "the measure of relief" is shaped by the "equity of the transaction," *Holt v. Holt*, 995 S.W.2d 68, 71 (Tenn. 1999) (quoting *Beatty v. Guggenheim Expl. Co.*, 122 N.E. 378, 380–81 (N.Y. 1919)), and balancing the equities "is necessarily a fact-intensive inquiry," *Acuity v. McGhee Eng'g, Inc.*, 297 S.W.3d 718, 728 (Tenn. Ct. App. 2008), the facts delineate the measure of relief, i.e., the range of acceptable dispositions. Thus, contrary to an all-or-nothing determination, the only limitation on the court's discretion to award the proceeds is the evidence regarding the equities of the parties. *See Coleman II*, 551 S.W.3d at 697. Based on the following equitable factors, we have determined that awarding all of the remaining insurance proceeds to Husband was not within the range of acceptable dispositions.

### A. Wife's Intent

It is undisputed that Wife did not want Husband to receive or have access to any of the life insurance proceeds. To accomplish this goal, Wife designated her mother, Ms. Coleman, the sole beneficiary. It is also clear, as the trial court emphasized, that Wife wanted Ms. Coleman to use the proceeds to benefit the Child. Nevertheless, Wife designated Ms. Coleman as the sole beneficiary without limitation. Thus, but for the temporary injunction, Ms. Coleman would have unfettered discretion to use the life insurance proceeds as she desired. *See Estate of Lane v. Courteaux*, No. M2016-00609-COA-R3-CV, 2017 WL 776101, at *6 (Tenn. Ct. App. Feb. 28, 2017) (holding that mother's desire for proceeds to be used for her child's benefit did not limit named beneficiary).

Had Wife survived the entry of a final judgment in the divorce action, Husband would have no claim to or interest in the insurance policy or its death benefit unless the final divorce decree mandated that Wife name Husband as a beneficiary of some or all of the death benefit to assure that Wife could fulfill her obligations for any award of child

- 13 -

support or alimony.[7] Moreover, Ms. Coleman's expectancy interest in the policy would have vested upon Wife's death and been free and clear of any claim by Husband.

Accordingly, this factor favors awarding the insurance proceeds to Ms. Coleman subject to what may have been necessary to assure that Wife fulfilled any court ordered obligations for child support. Nevertheless, this factor and the equities of this case also require that we consider and compare Husband's circumstances after Wife's death with the likely terms of a final divorce decree when applying the equitable-balancing test. *See Irvin*, 286 N.W.2d at 922 (finding the surviving spouse "was put in a better position than she would have enjoyed had [decedent] obeyed the injunctive order and had the divorce action proceeded to judgment"); *see also e.g.*, *Am. Family Life Ins. Co.*, 528 N.W.2d at 924 (explaining that the equitable-balancing approach "precludes a spouse from automatically receiving insurance proceeds which he or she would not have received had the decedent survived until a final decree was issued").

### B. Husband's Circumstances After Wife's Death

"Whether the death of a spouse during the pendency of a divorce action is an economic catastrophe or a windfall for the surviving spouse depends upon the character and extent of the decedent's estate." *Bell*, 896 S.W.2d at 564–65. Here, the parties provided relevant evidence, but that evidence did not provide a complete picture of the character and extent of Wife's estate. Moreover, no evidence was presented on Husband's income, separate assets, or separate debt. Nonetheless, "[t]he burden is on the parties to produce competent evidence . . . , and the parties are bound by the evidence they present." *Koch v. Koch*, 874 S.W.2d 571, 577 (Tenn. Ct. App. 1993) (quoting *Wallace v. Wallace*, 733 S.W.2d 102, 107 (Tenn. Ct. App. 1987)).

### 1. Assets and Debts

The evidence in the record shows that, because of Wife's death, Husband became solely responsible for $218,000 in debt. The debt included Wife's $37,000 car loan, Wife's $3,000 credit card debt, a $140,000 mortgage on the marital residence, and $38,000 in consolidation loans. The evidence also shows that Husband was the beneficiary on Wife's 401(k) account, valued at $15,000, and became the sole owner of the marital residence, valued at $150,000. Husband also became the sole owner of $2,500

---

[7] Husband was not a "mandatory beneficiary" when Wife removed him from the policy; thus, his expectancy interest had not vested. *See Wilharms*, 287 N.W.2d at 783 (distinguishing consequences of prohibitory, temporary injunctions from mandatory, permanent injunctions).

in jointly-owned personal property. Because Wife died intestate, Husband and the Child each inherited one-half of Wife's estate, which consisted of another $15,000 in funds and her $29,000 automobile, which was encumbered by the $37,000 car loan. In sum, Husband became the sole owner of $189,500 in assets and the sole obligor for $218,000 in debt.

A final disposition of property in the divorce would have included an equitable division of the marital debt, which totaled approximately $178,000, as well as an allocation of each spouse's separate debts. It would also have included a division of the marital assets, which totaled approximately $152,500. Had Wife survived the final divorce decree, the court would likely have allocated responsibility for some debts to Wife. Yet, due to Wife's untimely death, Husband assumed all the debt, which exceeded the value of the assets he received by approximately $28,500.

### 2. Child Support Obligations and Social Security Benefits

Because of Wife's untimely death, Husband bears the sole responsibility for raising their child, at least until the Child turns 18 years of age. Had Wife survived the divorce, the court would have established a permanent parenting plan with a parenting schedule and child support order. *See* Tenn. Code Ann. § 36-6-404(a). In setting child support under the child support guidelines, a court must consider, *inter alia*, the respective parenting time of the parents and their individual and combined incomes. *See* Tenn. Comp. R. & Regs. 1240-2-4-.04(3), (7). A parent who does not exercise parenting time shifts the care-giving and financial burdens to the other parent; therefore, the guidelines place an increased child support obligation on the parent not exercising parenting time. *See id*. 1240-2-4-.04(7). Moreover, the child support statute expressly provides a court with authority to direct the purchase and maintenance of insurance and designation of beneficiaries. *See* Tenn. Code Ann. § 36-5-101(i).

Husband testified that due to and since Wife's death he receives approximately $3,700 per month in financial payments. Wife's income before death was approximately $4,600 per month.[8] If Husband received full custody of the Child, as he has now, the

---

[8] Husband testified that he receives two social security benefits due to Wife's death: one for $1,660 per month as Wife's surviving spouse, and the other for $1,600 on behalf of the Child. Additionally, Husband receives a monthly benefit of approximately $450 from Navy Federal Credit Union, Wife's employer at the time of her death. Thus, as a result of Wife's death, Husband receives approximately $45,000 annually—not including the $500 a month he has been already been receiving from the insurance proceeds.

$3,700 per month Husband receives due to Wife's death exceeds what Wife would have been ordered to pay in child support. Thus, the insurance proceeds are not needed to assure the fulfillment of Wife's court ordered child support responsibilities.

The fact that Husband is not dependent on receiving the insurance proceeds to support the Child is evident from his actions and expenditures following Wife's death, which occurred without the benefit of the insurance proceeds. For example, after Wife's death, Husband purchased a $45,000 F-150 pickup truck and a $40,000 Jeep. He also sold the home he and Wife owned for $160,000 and bought a more expensive home for $260,000. Additionally, and significantly, just prior to Wife's death, Husband quit his job with Coca-Cola and remained unemployed for several months.

Nevertheless, we should consider that the Child may have unexpected medical expenses or extraordinary educational needs in the future that may not have been anticipated at the time of the divorce. *See* Tenn. Comp. R. & Regs. 1240-02-04-.03(6)(b). Had such occurred after the divorce, both Husband and Wife would have been responsible for the unexpected expenses. Now, Husband must bear such financial burdens by himself. Thus, this financial consequence must be considered along with all financial support Husband is receiving and will continue to receive because of Wife's death.

C. Ms. Coleman's Circumstances After Her Daughter's Death

Wife wanted her mother, Ms. Coleman, to receive all of the insurance benefits, and it is undisputed that she expressed a desire for her mother to use the proceeds to benefit the Child. Although Ms. Coleman had no legal responsibility to use any of the proceeds to benefit the Child, she used $50,000 of the insurance proceeds to open an educational fund that was solely for the Child's benefit. Moreover, although Wife's funeral expenses would have been Husband's sole responsibility, Ms. Coleman voluntarily paid her daughter's funeral expenses totaling $11,239.67 out of the insurance proceeds. Additionally, both of these expenditures were subsequently approved by the trial court as being appropriate. Thus, without being required to do so, Ms. Coleman used $61,239.67 of her money, the insurance proceeds, to benefit the Child and pay her daughter's funeral expenses, which was Husband's financial responsibility, not Ms. Coleman's.

Ms. Coleman also used some of the insurance proceeds to defend Husband's claim to recover the insurance proceeds and in her pursuit of grandparent visitation. Although the trial court disapproved of these expenditures, we find they were appropriate at the time because the life insurance company voluntarily paid the insurance proceeds to Ms. Coleman, and she was of the justified belief that the proceeds belonged to her without any legal restraints on the use of the proceeds.

We also find that Ms. Coleman was justified in believing that Husband might use the insurance proceeds in ways that did not benefit the Child. In addition to Husband's lavish spending following Wife's death, Husband's alleged conduct prior to Wife's death constituted inappropriate marital conduct at best. Wife's divorce complaint alleged grounds of inappropriate marital conduct, adultery, and irreconcilable differences. Although the allegations are not competent evidence and Husband denied having an affair, Ms. Coleman testified that she saw a picture of Husband with his girlfriend on social media the day prior to Wife's memorial service in Massachusetts. The caption accompanying the photo stated their relationship was now "Facebook Official."

Furthermore, while still married, Husband told Wife, who was then pregnant with their second child, during their separation and shortly before Wife's death, that her pregnancy was a "mistake." Additionally, when Wife texted Husband informing him she was being admitted to the hospital for the disease that ultimately took her life, Husband responded via text, "good luck with that." Accordingly, based on these and other circumstances, Ms. Coleman had just-cause to believe that Husband would not use the death benefits from Wife's insurance policy to benefit the Child, as Wife clearly desired. Thus, Ms. Coleman's defense against Husband's claim to recover all of the insurance proceeds was, at least in part, to preserve some of the insurance proceeds for her to use for the Child's benefit.

As a result of the litigation that ensued from Ms. Coleman's petition for grandparent visitation and Husband's action to recover all of the insurance proceeds, Ms. Coleman had to pay travel expenses to and from Nashville and Massachusetts and legal fees incurred during the first trial, the resulting appeals, the evidentiary hearing on remand, and this appeal. Consequently, Ms. Coleman is responsible for tens of thousands of dollars in expenses, and she does not have the means or assets to fulfill her obligations. Significantly, these expenses were incurred in pursuit of what Ms. Coleman believed to be in the best interest of the Child and to further her daughter's wishes.

During the pendency of this litigation, Ms. Coleman lost her job in Massachusetts, which she attributes to her frequent court appearances in Tennessee. Further, Ms. Coleman, who works in the accounting field, is concerned that potential employers will "Google" her name, and the first thing that will likely appear is a link to this litigation, in which Husband has accused her of forging the change of beneficiary form and stealing from her dying daughter.

As a direct consequence of Wife's decision to change the beneficiary and the events and expenses arising from that decision, Ms. Coleman is in a significantly worse financial posture than she would have been had Wife not named her as the beneficiary of the life insurance policy.

- 17 -

## IV.    AN EQUITABLE REMEDY

The remand instructions from *Coleman II* are to "remedy the violation of the statutory injunction by awarding all or a portion of the life insurance proceeds to either or both parties." 551 S.W.3d at 688. After applying the most applicable legal principles to the most relevant factors, we conclude that Husband is entitled only to the amount necessary to insure against future, unexpected medical and educational expenses.

Husband had no vested interest in the death benefit when Wife modified the beneficiary by naming Ms. Coleman as the sole beneficiary, only an expectancy interest. Wife violated the § 106(d) temporary injunction by modifying the beneficiary designation from Husband to Ms. Coleman while the divorce action was pending; nevertheless, the temporary injunction was not intended to ultimately determine the property rights of the parties, only to maintain the status quo pending a final resolution of the parties' rights arising from the divorce.

Wife was justified to change the beneficiary of her insurance policy from Husband to her mother because she believed Husband engaged in inappropriate marital conduct and had more faith in her mother than Husband in using the proceeds for the Child's benefit. Based on Ms. Coleman's viewing of a photo of Husband with his girlfriend on Facebook just before her daughter's memorial service, *inter alia*, Ms. Coleman was justified in believing that she had to resist Husband's efforts to claim the insurance proceeds to honor her daughter's wishes for the proceeds to be used for the Child's benefit and for Husband to receive none of the proceeds.

Except for being solely responsible for the Child's unexpected medical and extraordinary educational needs, Husband, as the surviving spouse, was not put in a worse position than he would have been had Wife obeyed the injunctive order and the divorce action proceeded to judgment. *See Irvin*, 286 N.W.2d at 922; *see also Am. Family Life Ins. Co.*, 528 N.W.2d at 924. Conversely, Ms. Coleman's financial circumstances are significantly worse due to the expenses incurred to honor her daughter's wishes to prevent Husband from receiving any of the proceeds and for the insurance proceeds be used for the Child's benefit.

Having considered the most relevant factors along with the reasoning of the foregoing authorities, Wife's violation of the temporary stay by changing the beneficiary of her insurance policy does not require an all-or-nothing, either/or determination. Instead, the equities of this case justify an award of a portion of the proceeds to Husband for unexpected medical and extraordinary educational expenses that Husband may incur in the future, with the balance of the remaining proceeds to the designated death benefit beneficiary, Ms. Coleman.

- 18 -

The death benefit remitted by the insurance company to Ms. Coleman as a consequence of Wife's death was $393,000. From these proceeds, Ms. Coleman deposited $50,000 into the Child's educational fund and spent $11,239.67 for Wife's funeral. She later deposited $265,186.24 in the court registry, from which the trial court approved the expenditure of $13,460.70 to pay the guardian ad litem. Additionally, in April of 2015, prior to the first appeal, the trial court authorized the payment of $500.00 per month to Husband from the court registry "in lieu of the benefits/child support which [Wife] would have provided if living." Although the record does not contain a statement from the court registry, Husband testified that he was still receiving this payment as of December 2018. This opinion is being filed in January of 2020. Thus, Husband has likely received 56 monthly payments of $500.00 each for a total of approximately $28,000. Accordingly, we estimate that approximately $224,000 remains in the court registry.[9]

As noted above, the trial court determined that, in addition to the monthly social security benefits and payment from Wife's former employer, Husband should receive $500.00 a month "in lieu of the benefits/child support which [Wife] would have provided if living" pending resolution of this dispute. Whether the death of a spouse during the pendency of a divorce action "is an economic catastrophe or a windfall for the surviving spouse depends upon the character and extent of the decedent's estate." *Bell*, 896 S.W.2d at 564–65. Having considered Husband's circumstances after Wife's death, we conclude that Husband's equitable share of the insurance proceeds should be based on the award of support in the amount of $500.00 per month, calculated from the death of Wife to when the Child turns eighteen years of age. The monthly payments Husband has received from the clerk out of the insurance proceeds are to be deducted from the aggregate sum to be disbursed to Husband pursuant to this court's decision.

Therefore, we modify the trial court's judgment by reducing Husband's award to the aggregate sum of monthly payments in the amount of $500.00, calculated from the date of Wife's death to the time the Child turns eighteen years of age, and to award Ms. Coleman the balance of the insurance proceeds. We also vacate the $86,880 monetary judgment awarded against Ms. Coleman, but we affirm the trial court's determination that Husband and Ms. Coleman shall be equally responsible for the fees and costs of the Child's guardian ad litem.

---

[9] The amount we estimate that remains in the court registry is not material to the equitable remedy this court has crafted.

Additionally, because Husband is awarded a portion of the insurance proceeds, although substantially less than the trial court awarded, and Ms. Coleman challenges the propriety of the award, we find it necessary to address the trial court's award of prejudgment interest to Husband. Tennessee Code Annotated § 47-14-123 permits the award of prejudgment interest "in accordance with the principles of equity at any rate not in excess of a maximum effective rate of ten percent (10%) per annum." The purpose of prejudgment interest "is to fully compensate a plaintiff for the loss of the use of funds to which he or she was legally entitled." *Hunter v. Ura*, 163 S.W.3d 686, 706 (Tenn. 2005) (quoting *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998)). The decision to award prejudgment interest is discretionary, but "[t]he trial court must consider whether the amount of the obligation was certain or ascertainable and whether the existence of the obligation was disputed on reasonable grounds." *Id*.

Because the amount of the obligation was uncertain and the existence of the obligation was disputed on reasonable grounds, we find an award of prejudgment interest is inappropriate in this case. *See id*. Accordingly, we vacate the award of prejudgment interest on the award to Husband.

### V. FUNDS FROM MS. COLEMAN'S BANK ACCOUNT

Finally, Ms. Coleman contends the trial court erred in 2015 by ordering her to satisfy the judgment against her in part with funds from her personal bank account. We need not address this issue, however, because Ms. Coleman will receive all remaining funds—including the funds from her bank account—after Husband's award is determined and disbursed.

### IN CONCLUSION

Therefore, the judgment of the trial court is modified and this case is remanded with instructions to calculate and award Husband's equitable share of the insurance proceeds and to remit a lump-sum payment less all payments he has already received from the clerk of the court. The court is then to award Ms. Coleman the balance of the insurance proceeds and disburse the remaining funds in the registry—including the funds deposited from Ms. Coleman's bank account. We vacate the $86,880 judgment against Ms. Coleman and the award of prejudgment interest, and we affirm the court's assessment of the guardian ad litem's fees equally against the parties. Costs of appeal are assessed equally against the parties. The trial court may, in its discretion, assess and withhold from the disbursements to Husband and Ms. Coleman funds necessary to pay court costs, the fees of the guardian ad litem, and other expenses.

_____
FRANK G. CLEMENT JR., P.J., M.S.

- 20 -